UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| AMANDA G. BROWN *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.1:14-CV-00223 |
| | ) | |
| v. | ) | Judge Curtis L. Collier |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| OF TENNESSEE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

Before the Court is a motion to dismiss filed by Defendant Blue Cross Blue Shield Tennessee ("BCBST") (Court File No. 14). Plaintiffs Amanda Brown and Harrogate Family Practice LLC (collectively "Plaintiffs") (Court File No. 24). And BCBST replied (Court File No. 27). For the reasons set forth below, the Court will **GRANT** BCBST's motion (Court File No. 14) and **DISMISS** for lack of subject matter jurisdiction because Plaintiffs do not have standing under ERISA to pursue their claims.

**I.    BACKGROUND**

Plaintiff Harrogate Family Practice is a medical provider owned by Plaintiff Amanda Brown that regularly sees patients under Defendant BCBST plans and has executed a Health Care Professional Agreement with BCBST to be an in-network provider. Pursuant to the Agreement, Plaintiffs submit bills on behalf of their patients to BCBST and receive payment directly. In November 2013, BCBST conducted audits of Plaintiffs' reimbursement claims and discovered that Plaintiffs had allegedly improperly billed and received payment for certain

procedures including alleged investigational procedures called ALCAT tests.  Upon learning of these irregularities, BCBST sent five letters to Plaintiffs in January, February, and March of 2014 notifying Plaintiffs of the overpayments and seeking recoupment pursuant to the parties' agreement.

Plaintiff's counsel sent a letter April 3, 2014 asserting that these recoupments violated ERISA.  The parties negotiated a tolling and standstill agreement to hold the status quo while the parties attempted to resolve the billing dispute.  After the negotiations broke down, BCBST began to recoup the overpayments by offsetting them against new reimbursement claims from the Plaintiff.  In response, Plaintiff filed suit in this Court seeking injunctive and declaratory relief under ERISA §§ 502(a)(3) and 502(a)(1)(B).  Plaintiffs also seek to recover for breach of the tolling agreement.

## II.     STANDARD OF REVIEW

BCBST claims that Plaintiffs' claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Under Rule 12(b)(1), a defendant may challenge this Court's subject matter jurisdiction through a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack "questions merely the sufficiency of the pleading." *Id*. A court must take the allegations in the complaint to be true when reviewing a facial attack. *Id*. On the other hand, where there is a factual attack, the Court must weigh conflicting evidence provided by the plaintiff and the defendant to determine whether subject matter jurisdiction exists. *Id*. Such evidence can include, and is not limited to, "affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id*. The party asserting that subject

3

matter jurisdiction exists has the burden of proof. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

## III. ANALYSIS

Defendant argues that the Court should dismiss Plaintiffs' claims because they do not have standing to pursue them. Title 29 United States Code Section 1132(a) governs the standing requirements for who may bring a civil action under ERISA. Plaintiffs claim to have direct standing as a beneficiary as a healthcare provider. Alternatively, Plaintiffs claim that they have derivative status as a beneficiary through certain "Benefits Forms" they claim constitute assignments of rights.

### A.  Direct Beneficiary Standing

Plaintiffs argue that they qualify as beneficiaries under the terms of ERISA and thus have direct standing to pursue their claims. For purposes of ERISA, the term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002.

Plaintiffs argue that a payment is a benefit and because they were authorized to receive direct payment, they qualify as beneficiaries. Many of the cases cited by Plaintiffs do not support their argument but rather deal with whether nonemployee plaintiffs designated by the plan can qualify as beneficiaries.[1] *See e.g.*, *Harper v. Am. Chambers Life Ins. Co.*, 898 F.2d 1432, 1434 (9th Cir. 1990) (holding that because a partner's spouse was designated by the policy

---

[1] In *Harper v. Am. Chambers Life Ins. Co.*, 898 F.2d 1432, 1434 (9th Cir. 1990), the Ninth Circuit held that while the partners and spouses of partners in a partnership that established a policy could not qualify as "participants" because they were not employees, they could qualify as "beneficiaries" because the policy designated the spouses as entitled to benefits.

4

as entitled to receive benefits, she had standing to pursue claims as a beneficiary); *Ruttenberg v. U.S. Life Ins. Co. in City of New York, a subsidiary of Am. Gen. Corp.*, 413 F.3d 652, 662 (7th Cir. 2005) (holding that an independent contractor was a beneficiary because he was "a person designated to receive benefits under the terms of the plan itself" even though he was not an employee).

The only case that directly supports Plaintiff's argument is *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2014 WL 1276585 at * 7 (N.D. Ill. Mar. 28, 2014) which did hold unequivocally that a payment is an ERISA "benefit" and thus chiropractors designated to receive payment were beneficiaries. This case however has also been criticized as "incorrect and contrary to the weight of authority" and "the only case ever to reach this conclusion." *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona Inc.*, No. CV-13-01558-PHX-NVW, 2014 WL 3349920, at *7 (D. Ariz. July 9, 2014).

The holding of *Pa. Chiropractic* is also at odds with binding Sixth Circuit precedent, *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001), which Plaintiffs do not discuss or attempt to distinguish. In *Ward*, a chiropractor sought to bring claims under ERISA. The Sixth Circuit held that "[t]he fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing." *Id*. *Ward* is factually indistinguishable from this case and is binding precedent on the Court and therefore disposes this issue. Providers are not ERISA beneficiaries merely because they are entitled to receive payment. Plaintiffs do not have direct statutory standing.

B.  **Assignments**

Plaintiffs also argue that they have derivative standing as a beneficiary through certain

5

"Benefits Forms"[2] they claim constitute assignments of rights. As noted above, for purposes of ERISA, the term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002. A provider may obtain derivative standing as a beneficiary if it receives an assignment of benefits from a patient who is a participant in the plan. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991). The question before the Court is whether the language of these Benefits Forms is sufficient to constitute an assignment of Plaintiffs' patients' ERISA rights. The relevant language from the body of the document[3] is as follows:

> I request that payment of authorized insurance benefits, including Medicare, if I am a Medicare Beneficiary, be made on my behalf to Harrogate Family Practice, LLC, or Cumberland Gap Medical for any medical services provided to me by that organization. . . . I understand that I am financially responsible to the organization for any charges not covered by health benefits. . . . I am responsible for the entire bill or balance of the bill as determined by the organization and/or my health care insurer if the submitted claims or any part of them are denied for payment.

(Court File No. 9-3).

There is no consensus among the federal courts regarding whether language providing for direct payment of benefits constitutes an assignment for purposes of ERISA. District courts in both the Fifth and the Third Circuit have concluded that the right to payment without more is

---

[2] As evidence of the assignment of claims, Plaintiffs have submitted five exemplar requests for payment attached to their amended complaint (Court File No. 9-3). Because the question of standing is jurisdictional, the Court may consider matters outside the pleadings. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

[3] The Benefits Forms are entitled "Assignment of Benefits Form," but the title of the form is not entitled to dispositive legal effect. *Cf. United States v. Leslie Salt Co.*, 350 U.S. 383, 389 (1956) (holding that whether certain notes could be regarded as "debentures for purposes of the statute depended on their "essential characteristics" rather than their "descriptive caption").

6

insufficient to confer standing. *See, e.g.*, *Touro Infirmary v. Am. Mar. Officer*, No. CIV.A. 07-1441, 2007 WL 4181506, at *5 (E.D. La. Nov. 21, 2007); *MHA, LLC v. Aetna Health, Inc.*, No. CIV.A. 12-2984 SRC, 2013 WL 705612, at *4 (D.N.J. Feb. 25, 2013). By contrast, the Eleventh Circuit has concluded "that assignment of the right to payment *is* enough to create standing." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352 (11th Cir. 2009) (emphasis added).

Plaintiffs argue that the Benefits Form should constitute valid assignment. Plaintiffs base much of their argument on a recent case out of the Middle District of Tennessee, *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901 (M.D. Tenn. 2013). In *Productive MD*, the court held that a provider of medical tests had received a valid assignment sufficient to confer standing under ERISA based on the following language:

> I authorize payment of medical benefits to Productive MD for services rendered. I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to Productive MD.

*Id.* at 907. Productive MD was an "out of network" provider of medical tests. Aetna began to systematically deny claims from Productive MD in what Productive MD believed to be retaliation for its refusal to join Aetna's provider network. Productive MD sued Aetna arguing that its denials violated ERISA and asserted standing arguing that the above language constitutes an assignment sufficient to give Productive MD standing to pursue their ERISA claims.

The *Productive MD* court analyzed the Sixth Circuit's opinion in *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991)[4] and concluded that the Sixth Circuit

---

[4] *Cromwell* involved a complex factual and procedural history that muddies the precise holdings of the panel. *See Ward*, 261 F.3d at 627 ("*Cromwell* is a confusing case . . . ."). The district court in *Cromwell* had made several holdings regarding ERISA preemption before

7

would likely side with the Eleventh Circuit and hold that the right to receive payment is enough to confer standing. There were also factors specific to Productive MD's situation that supported finding a valid assignment in that case: (1) there was no indication that Productive MD could sue the patients after Aetna failed to pay for the tests, and (2) "it would seem manifestly unjust to drag into this litigation all 167 patients, who would then need to sue Aetna for the unpaid balances so as to avoid paying Productive MD out of their own pockets." *Productive MD,* 969 F. Supp. 2d at 916.

> Productive MD performed medically necessary services on patients without demanding payment up front, and Productive MD assumed both the responsibility to pursue the claims for payment—with its attendant esoteric administrative claim procedures and administrative appeals procedures—and the risk that the Aetna would pay for the services only in part or not at all.

*Id.* Because Productive MD was an "out of network" provider, there was no contractual mechanism for Productive MD to challenge the denials themselves apart from ERISA.

BCBST argues that *Productive MD* was wrongly decided because it failed to apply basic contractual principles to the assignments at issue. According to basic contract principles, a valid assignment must contain "a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee. 29 Williston on Contracts § 74:3 (4th ed.). BCBST argues that, because the Benefits Form does not

---

assessing jurisdiction over a year into the case and ultimately finding that it did not have jurisdiction. Significantly, the purported assignee was the one challenging whether the assignment was effective. In response, the Court noted that "[t]here was nothing in appellants' complaint indicating that the assignment of benefits was invalid or ineffective." *Cromwell*, 944 F.2d at 1277. Given the peculiar context of *Cromwell* and the fact that the issue of whether the purported assignment was effective was not apparently litigated at the district court, the Court views *Cromwell's* statements on this point to be dicta and not binding with regards to this Court's analysis.

refer to any legal rights, causes of action, ERISA rights or contractual rights, much less express an intent to transfer those rights and thus cannot constitute a valid assignment of such rights.[5]

BCBST also points to several factors that distinguish *Productive MD* from the case at bar. First, Productive MD was an out of network provider whose only recourse to challenge payment denials came from these assignments. By contrast, because Plaintiff is an in network provider, there is a contractual relationship and agreed upon procedure for deciding claims disputes between the parties. Another factor that is quite different here is the fact that under the Benefits Form, the patients remain on the hook for payment if Plaintiffs do not receive payment from BCBST (*see* Court File No. 9-3 ("I understand that I am financially responsible to the organization for any charges not covered by health benefits. . . . I am responsible for the entire bill or balance of the bill as determined by the organization and/or my health care insurer if the submitted claims or any part of them are denied for payment.")). Unlike Productive MD, Plaintiffs did not "assume[] both the responsibility to pursue the claims for payment . . . and the risk that the [the insurer] would pay for the services only in part or not at all." *Productive MD,* 969 F. Supp. at 916.

---

[5] BCBST also finds support in United States Department of Labor Guidelines which distinguish between the assignment of the right to payment for services rendered and the assignment of the right to pursue ERISA remedies. Compliance Assistance, Group Health and Disability Plans, Benefit Claims Procedure Regulation at *7 (29 C.F.R. 2560.503-1) *available at* http://www.dol.gov/ebsa/pdf/caghdp.pdf ("An assignment of benefits by a claimant is generally limited to assignment of the claimant's right to receive a benefit payment under the terms of the plan. Typically, assignments are not a grant of authority to act on a claimant's behalf in pursuing and appealing a benefit determination under a plan."). These Guidelines further discuss the importance of clarity in assignments of ERISA rights. If the ERISA claimant has assigned his rights to an authorized representative, the plan "should, in the absence of a contrary direction from the claimant, direct all information and notifications to which the claimant is otherwise entitled to the representative authorized to act on the claimant's behalf with respect to that aspect of the claim." *Id*. at *8. And so "it is important that both claimants and plans understand and make clear the extent to which an authorized representative will be acting on behalf of the claimant." *Id*.

In contrast to *Productive MD* and the Eleventh Circuit, several district courts have held that a patient's authorization for an insurer to make payment directly to a provider, without more, does not constitute an assignment. The case most directly on point is *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 14 F. Supp. 3d 619 (E.D. Pa. 2014). In this case, a provider alleged standing as an assignee of a beneficiary based on a form titled "Assignment of Benefits" that stated:

> I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered. I understand that I am financially responsible for all charges whether or not they are paid by insurance (commercial, worker's compensation, auto, etc.). In the event of an unpaid balance, I am aware that my bill will be sent to the collection agency and that I will be held responsible for any and all charges incurred, including attorney fees.

The court held that "the purported assignments merely afford [the provider] the right to seek payment directly from the insurance companies on his patients' behalf for the services rendered. *Id*. The court pointed out that none of the language in the purported assignment discussed the transfer of any rights other than the right to receive payment. The court also noted that the patient remained on the hook for any charges not paid by insurance. On the basis of these factors, the court held that there was not a valid assignment. *Id*. Several other cases support and apply this reasoning. *See MHA, LLC v. Aetna Health, Inc.*, No. CIV.A. 12-2984 SRC, 2013 WL 705612, at *4 (D.N.J. Feb. 25, 2013) (holding that an authorization for payment without any discussion of legal rights did not constitute a valid assignment); *Touro Infirmary v. Am. Mar. Officer*, No. CIV.A. 07-1441, 2007 WL 4181506, at *5 (E.D. La. Nov. 21, 2007) (same).

Consistent with this reasoning, the Western District of Tennessee in *Univ. of Tennessee William F. Bowld Hosp. v. Wal-Mart Stores*, Inc., 951 F. Supp. 724, 726 (W.D. Tenn. 1996) found that an assignment was effective even in the face of an anti-assignment clause where the

10

assignment was clear and unambiguous. In *Bowld Hospital*, the assignment read as follows:

> For and in consideration of medical services rendered by the Hospital to the patient named herein, I hereby assign and transfer to the hospital all of my rights in and to any medical benefits payable to me or to a beneficiary under the below listed policies but not to exceed the Hospital's regular charges for this period of hospitalization.
> I further assign and transfer to the aforesaid assignees any rights for payment of medical benefits which I may have under any policy of insurance not referenced below which may be determined hereafter to pay benefits otherwise payable to me or to a beneficiary designated in the policy. By this assignment I authorize payment directly to the Hospital of all medical benefits payable under the aforesaid policies.

*Id*. at 726 n.2. This language indisputably evinces an intent to assign—and it is notable the striking difference between the language in *Bowld Hospital*, and the Benefits Form language here.

The cases holding that forms providing for direct payment do not constitute an assignment have the better end of the argument. An assignment divests the patient of their own right to pursue ERISA remedies. *See Collier v. Greenbrier Developers*, LLC, 358 S.W.3d 195, 201 (Tenn. Ct. App. 2009) ("[T]he transfer of a contract right extinguishes the assignor's right to performance by the obligor and gives the assignee a right to that performance.") (quoting E. Allan Farnsworth, Contracts § 11.3, p. 709 (3d ed. 1999)). Thus, such a provision should constitute an assignment only when the assignor evinced a clear intent to transfer rights to the assignee.[6] *See* Restatement (Second) of Contracts § 324 (1981) ("It is essential to an assignment

---

[6] This is especially true in this context where broad construction could facilitate manipulative behavior by the provider. An assignment places the assignee in the shoes of the assignor giving the assignee both the rights and the risks associated. Finding that an ambiguous form such as that at issue here constitutes an assignment for purposes of ERISA would allow providers to assert inconsistent positions depending on their needs. If they feel that asserting the patient's rights under ERISA is advantageous, the agreement becomes an assignment. If, on the other hand, the provider thinks it has a better shot at getting the money from the patient, the form

of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee."). The DOL language further supports requiring more than a direct payment authorization to constitute a valid assignment.

Based on these principles, the Court concludes that the Benefits Forms do not assign any paitient's ERISA rights, but rather merely provide for direct payment from the insurer to the provider. Unlike the form in *Bowld Hospital*, the Benefits Form does not use any language that would suggest an intent to assign ERISA rights. *Compare* Court File No. 9-3 ("I request that payment of authorized insurance benefits, including Medicare, if I am a Medicare Beneficiary, be made on my behalf to Harrogate Family Practice, LLC, or Cumberland Gap Medical for any medical services provided to me by that organization.") *with Bowld Hosp.,* 951 F. Supp. at 726 ("For and in consideration of medical services rendered by the Hospital to the patient named herein, I hereby assign and transfer to the hospital all of my rights in and to any medical benefits payable to me or to a beneficiary under the below listed policies but not to exceed the Hospital's regular charges for this period of hospitalization."). The Court will thus not read into the forms any intent that does not appear on their face.

A key factor in deciding whether there is a valid assignment is whether the alleged assignor agreed to take on the risk of nonperformance along with the assignee's right to enforce performance. Productive MD asserted the right to seek payment on its patient's behalf and acknowledged that it would have no recourse against the patient if Aetna did not pay. By contrast, here, under the Benefits Form Plaintiffs generally retain the right to seek payment from

---

becomes an authorization for direct payment under which the provider retains the right to seek payment from the patient in the event the insurer does not pay (*see* Court File No. 9-3 ("I am responsible for the entire bill or balance of the bill as determined by the organization and/or my health care insurer if the submitted claims or any part of them are denied for payment.")). These conflicting positions are inconsistent with the notion of an assignment.

12

the patient if they are unsuccessful (*see* Court File No. 9-3 ("I understand that I am financially responsible to the organization for any charges not covered by health benefits. . . . I am responsible for the entire bill or balance of the bill as determined by the organization and/or my health care insurer if the submitted claims or any part of them are denied for payment.")). A right to receive payment does not constitute an assignment without a concurrent transfer of the risk of nonpayment. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014) ("It is a basic principle of assignment law that an assignee's rights derive from the assignor. That is, 'an assignee of a contract occupies the same legal position under a contract as did the original contracting party, he or she can acquire through the assignment no more and no fewer rights than the assignor had, and cannot recover under the assignment any more than the assignor could recover.'" (quoting 6A C.J.S. Assignments § 110)).

      The Court concludes that the Benefits Form is not a valid assignment because the language used does not sufficiently express an intent to transfer patients' rights to pursue ERISA claims. Because the Benefits Forms are not valid assignments, Plaintiffs do not have standing to pursue their ERISA claims. The Court thus must **DISMISS** for lack of subject mater jurisdiction.

## IV.    CONCLUSION

      Because the Plaintiffs do not have standing to pursue their patients ERISA claims, the Court will **GRANT** BCBST's motion to dismiss for lack of subject matter jurisdiction (Court File No. 14).

      **SO ORDERED.**

ENTER:

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**